IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND STATE INSURANCE COMPANY, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DONALD LEE DEARDORFF, and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____/ | Case No. 1:10-cv-00004 AWI JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES IN PART AND DENYING IT IN PART<br><br>(Doc. 84) |

Now pending before the Court is Defendant Donald Lee Deardorff's motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 37(c)(2). Plaintiff Diamond State Insurance Company and Plaintiff Great American Insurance Company (collectively "Plaintiffs") have filed an opposition to the motion, and Defendant has filed a reply. In addition, the parties appeared before the Court for hearing on this matter. Upon consideration of the parties' submitted papers, the arguments made at hearing, and the record in this case, the Court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**.

I. **BACKGROUND**

This is a subrogation case that arises out of the death of six horses that were in the care of Defendant in 2008. (Doc. 35 at 3.) Plaintiffs are insurance companies that issued insurance policies to the owners of the horses ("Horse Owners"). Plaintiffs have paid the Horse Owners for their losses and now seek to recover damages from Defendant for breach of contract, conversion, trespass to chattels,

1

and negligence. (Id. at 5-8.)

Defendant served his first requests for admissions pursuant to Federal Rule of Civil Procedure 36(a) on Plaintiff Diamond State Insurance Company on April 2, 2010 (Doc. 86-4), and on Plaintiff Great American Insurance Company on July 23, 2010 (Doc. 86-8). Plaintiff Diamond State Insurance Company served its initial responses to the requests for admissions on May 6, 2010 (Doc. 86-5), filed a supplemental response on June 1, 2010 (Doc. 86-6), and filed a second supplemental response on June 3, 2010 (Doc. 86-7). Plaintiff Great American Insurance Company served its responses to the requests for admissions on September 9, 2010. (Doc. 86-9.)

On April 15, 2011, the Court granted summary judgment in favor of Defendant and closed this case. (Doc. 80.) Specifically, the Court found that the one-year statute of limitations period provided by California Code of Civil Procedure § 340(c) applied to this action and barred Plaintiffs' claims. (Id. at 12-20.) In the alternative, the Court also found that the Horse Owners insured by Plaintiff Diamond State Insurance Company signed releases waiving the right to recover against Defendant for any harm done to the horses arising out of Defendant's negligence; Defendant did not commit gross negligence; Defendant is not a common carrier; the Horse Owners assumed the risk of death to their horses; and Defendant did not intentionally destroy the horses. (Id. at 21-43.)

On April 29, 2011, Defendant filed the instant motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 37(c)(2). (Docs. 84-87.) Therein, Defendant argues, among other things, that Plaintiffs failed to admit matters that were subsequently proven by Defendant on summary judgment. (Doc. 85.) Plaintiffs filed an opposition to the motion on May 23, 2011. (Doc. 89.) Defendant filed a reply, along with evidentiary objections to Plaintiffs' opposition, on May 27, 2011. (Docs. 90 & 92.) The parties appeared before the Court for hearing on this matter on June 6, 2011.

**II.    LEGAL STANDARD**

Rule 37(c)(2) provides:

> ***Failure to Admit.*** If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document genuine or the matter true, the requesting party may move the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A) the request was held objectionable under Rule 36(a);

2

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

The overarching goal of Rule 37(c)(2), like the Federal Rules in general, is "to secure the just, speedy, and inexpensive determination of every case." Marchand v. Mercy Medical Ctr., 22 F.3d 933, 936 (9th Cir. 1994) (quoting Fed. R. Civ. P. 1). "Parties may not view requests for admissions as a mere procedural exercise requiring minimally acceptable conduct." Marchand, 22 F.3d at 936. Rule 37(c)(2) "mandates an award of expenses unless an exception applies" and therefore "encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts." Id.

## III. DISCUSSION

### A. Failure to Consult

Defendant contends that he is entitled to an award of expenses and attorneys' fees pursuant to Rule 37(c)(2) because Plaintiffs failed to consult with the insured Horse Owners before responding to Defendant's requests for admissions. (Doc. 85 at 5-6.) Defendant emphasizes that because this is a subrogation case, where Plaintiffs' rights are wholly derivative of those held by the Horse Owners, it was incumbent on Plaintiffs to confer with the Horse Owners to ensure that its responses to the requests for admissions were reasonably supported. (See id. at 3, 9.)

Defendant also asserts that Plaintiffs' failure to consult with the Horse Owners was done in bad faith. (Id. at 9.) Counsel for Defendant declares the following in this regard. On May 12, 2010, counsel for Defendant contacted Plaintiffs' counsel to discuss inconsistencies in Plaintiffs' discovery responses. (Doc. 86 ¶ 8.) Plaintiffs' counsel conceded that the Horse Owners should have been consulted, but were not, prior to Plaintiffs filing their discovery responses. (Id.) Counsel for Defendant agreed to a short extension of time for Plaintiffs' counsel to consult with the Horse Owners and for Plaintiffs to amend or supplement their responses. (Id.) Plaintiffs' counsel later represented to counsel for Defendant that the Horse Owners had been consulted and the responses were prepared based on information provided

by the Horse Owners. (Doc. 86-10 at 6.) However, the depositions of the Horse Owners later revealed that they were either never consulted or consulted only with respect to one issue: whether they signed a waiver of their rights to sue. (See Doc. 86-11 at 2-5, 26-27, 31, 35-38, 47-55.)

The Court disagrees that Defendant is entitled to an award of attorneys' fees under Rule 37(c)(2) simply because, as a general matter, Plaintiffs did not consult with the Horse Owners despite representing that they had. To the extent that Defendant argues that Plaintiffs failed to conduct a reasonable and good faith investigation before responding to the requests for admissions, the proper avenue for seeking relief was a motion under Rule 36(a)(6). See Fed. R. Civ. P. 36(a)(6) (a party may move to challenge the sufficiency of a response to a request for admission). Rule 37(c)(2), on the other hand, focuses on whether the party had good reason for denying a request for admission. See Fed. R. Civ. P. 37(c)(2)(A)-(D). The fact that Plaintiffs did not fully consult with the Horse Owners prior to responding to the requests for admissions does not mean, per se, that Plaintiffs lacked good reason for denying the requests. Plaintiffs could, and in fact do, rely on other grounds to support their belief that such a course of action was proper. Accordingly, the Court declines to award attorneys' fees on this basis alone.

**B.     Failure to Admit**

Defendant also contends that he is entitled to an award of expenses and attorneys' fees pursuant to Rule 37(c)(2) because Plaintiffs failed to admit matters that were subsequently proved by Defendant on summary judgment. (Doc. 85 at 7-8.) In particular, Defendant argues that Plaintiff Diamond State Insurance Company failed to admit request for admission numbers 6, 9, 10, 12, 13, 15, 16, 18, and 23, while Plaintiff Great American Insurance Company failed to admit request for admission numbers 6, 9, and 14. (Id. at 3-5.) Plaintiffs counter in their opposition that their responses were supported by a reasonable belief that they might prevail on each matter for which admissions were sought. (Doc. 89 at 9-14.) The Court evaluates the parties' positions in further detail below.

**1. Requests for Admissions Regarding Boarding Services**

Defendant requested Plaintiffs to admit that the July 6, 2008 incident occurred while Defendant was providing boarding services for the Horse Owners. Defendant's request for admission and Plaintiff Diamond State Insurance Company's response are as follows:

4

> REQUEST FOR ADMISSION NO. 23:
> Admit that the incident occurred in the course of the boarding services the Horse Owners engaged Deardorff to provide to the Horses.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 23:
> Responding Party has insufficient information at this time to enable Responding Party to admit or deny this request in whole. Discovery and investigation are ongoing and Responding Party reserves the right to amend and/or supplement this response.

(Doc. 86-4 at 5; Doc. 86-7 at 4.) Defendant's request for admission and Plaintiff Great American Insurance Company's response are as follows:

> REQUEST FOR ADMISSION NO. 14:
> Admit that the incident occurred in the course of the boarding services the Horse Owners engaged Deardorff to provide to the Horses.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 14:
> Responding Party has insufficient information at this time to enable Responding Party to admit or deny this request in whole. Discovery and investigation are ongoing and Responding Party reserves the right to amend and/or supplement this response.

(Doc. 86-8 at 4; Doc. 86-9 at 6-7.)

Defendant argues that through discovery and his motion for summary judgment, he proved that the death of the horses occurred in the course of the boarding services provided by Defendant. (Doc. 85 at 7.) Defendant emphasizes that the Court found in its order granting summary judgment that the transportation service provided by Defendant was not a separate service, but one that was integral to the boarding and feeding of the horses. (See id. at 8.) The Court concluded that because California Code of Civil Procedure § 340(c) applies to actions involving the boarding and feeding of animals, the one-year statute of limitations period contained therein barred all of Plaintiffs' claims in this action. (See Doc. 80 at 10-20.)

Plaintiffs counter in its opposition that it had a reasonable belief that it might prevail on the issue of whether its claims were barred under California Code of Civil Procedure § 340(c). (Doc. 89 at 13.) Plaintiffs argue that although California Code of Civil Procedure § 340(c) expressly applies to claims for negligence against a person who "boards and feeds an animal," the statutory language does not explicitly include actions where the injury or death of the animal occurred during its transport. (Id. at 13-14.) As support for its argument that "boarding" and "transporting" an animal are distinct services, Plaintiffs point to a rate schedule for Defendant's stable that sets forth different prices for "boarding"

5

and "transportation," among other things. (Id. at 14.)

The Court explicitly rejected the reasonableness of Plaintiffs' arguments in its order granting summary judgment. There, the Court explained:

> What Plaintiffs have done is found a separate charge in the rate schedule for transportation and have concluded that, if that charge applies, it means that none of the other services offered by [Defendant] apply. The Horse Owners' testimony, as outlined above, show that this is incorrect. The testimony of the Horse Owners confirm that the transportation services are part of the overall boarding relationship with [Defendant.] The idea that [Defendant] is no longer boarding a horse when he is in the process of transporting the horse leads to very strange conclusions. Essentially, just before the horses are on the trailer, [Defendant] would be boarding the horses; while the horses are feeding in the trailer and are in transit to and from a horse show, [Defendant] is not boarding the horse, but instead is strictly transporting the horse; but when they arrive back at the stable, then [Defendant] is once again boarding the horses. . . . None of the Horse Owners' testimony supports Plaintiffs' position. Plaintiffs read entirely too much into a Rate Schedule, and ignore the admissions of their insureds.

(Doc. 80 at 17-18.)

The Court also explained the particular significance of the admissions of the Horse Owners in this subrogation action. Specifically, Plaintiffs, as subrogees, "stand in the shoes of their insureds and are bound by certain admissions of their insureds." (Doc. 80 at 14.) See Great American Ins. Cos. v. Gordon Trucking, Inc., 165 Cal. App. 4th 445, 451 (2008) (subrogee is bound by discovery responses provided by its insureds). "Because the Plaintiffs are bound by certain admissions, any arguments by the Plaintiffs that are contrary to . . . admissions [made] by their insureds are proscribed." (Doc. 18 at 14.) This includes Plaintiffs' argument that the rate schedule somehow shows that "transportation" is exclusive of "boarding." (See id. at 18.)

It is in this context that Plaintiffs' failure to consult with the Horse Owners over the requests for admissions (despite being warned of the need to consult with the Horse Owners and being given extra time to do so) is particularly troubling. Because Plaintiffs are bound by the admissions of the insureds, it was incumbent on Plaintiffs to ascertain the Horse Owners' understanding of the nature of services Defendant provided. After all, it is the parties' intentions that govern the contractual relationship between them. See Sony Computer Entertainment America, Inc. v. American Home Assur. Co., 532 F.3d 1007, 1012 (9th Cir. 2008) ("The interpretation of a contract must give effect to the mutual intention of the parties . . . at the time the contract was formed.") (quotations and citation omitted). Plaintiffs could not turn a blind eye to *decisive* testimony against their position, opting instead to rely

solely on a rate schedule that was of questionable value.

The facts of this case are analogous to those in Marchand. In Marchand, a physician was asked to admit that the treatment he provided plaintiff failed to comply with the applicable standard of care. 22 F.3d at 937. The physician denied the request for admission and later was sanctioned by the district court pursuant to Rule 37(c)(2). Id. On appeal, the Ninth Circuit upheld the sanction, despite the fact that an expert had testified that the physician had met the applicable standard of care. Id. The Ninth Circuit reasoned that the district court did not abuse its discretion in discrediting the expert's testimony because (1) the expert contradicted his deposition statement at trial; (2) the physician contradicted his deposition statement at trial; and (3) the physician admitted facts at trial that clearly demonstrated that he had not met the applicable standard of care. Id. In light of all this, the Ninth Circuit concluded that the physician could not have reasonably denied, when asked for an admission, that his treatment failed to comply with the applicable standard of care. Id.

Like the physician in Marchand, Plaintiffs rely entirely on a single source of evidence (the rate schedule[1]) to support their position that denying the request for admission was proper. Moreover, like the expert's testimony in Marchand, the rate schedule on which Plaintiffs rely was contradicted by overwhelming testimony that is both binding on Plaintiffs and determinative of the issue. Lastly, this information could have been and should have been obtained from the Horse Owners early in the case–probably, even during Plaintiffs' duly diligent pre-filing investigation–but Plaintiffs refused to seek out this information even when the requests for admission required it. Accordingly, the Court finds that Plaintiffs did not have a reasonable basis for believing that they might prevail on this matter. Thus, in accordance with Rule 37(c)(2), Defendant is entitled to expenses, including attorneys' fees, that were incurred in proving this issue.

**2. Requests for Admissions Regarding Intentional Harm to the Horses**

Defendant requested Plaintiffs admit that Defendant did not intentionally harm the horses. The request for admission and Plaintiff Diamond State's response are as follows:

---

[1] The Court is mindful that Plaintiffs did not obtain the 2008 rate schedule until November 4, 2010, though the 2007 and 2009 rate schedules were produced on May 20, 2010. (Doc. 90 at 4 and n. 4) Plaintiff Diamond State's response to the first set of requests for admission was issued on May 6, 2010 (Doc. 86 Ex. 5), its supplemental response was June 1, 2010 (Doc. 86 Ex. 6) and its second supplemental response was dated June 3, 2010 (Doc. 86 Ex. 7). Plaintiff Great America's response to the first set of requests for admission was provided on September 9, 2010 (Doc. 86 Ex. 9).

>REQUEST FOR ADMISSION NO. 6
>Admit that Deardorff did not intentionally harm the Horses on July 6, 2008.
>
>RESPONSE TO REQUEST FOR ADMISSION NO.6:
>Deny.

(Doc. 86-4 at 3; Doc. 86-7 at 2.) The request for admission and Plaintiff Great American's response are as follows:

>REQUEST FOR ADMISSION NO. 6
>Admit that Deardorff did not intentionally harm the Horses on July 6, 2008.
>
>RESPONSE TO REQUEST FOR ADMISSION NO.6:
>Deny.

(Doc. 86-8 at 3; Doc. 86-9 at 5.)

Defendant argues that through discovery and his motion for summary judgment, he proved that he did not intentionally harm the horses on July 6, 2008. (Doc. 85 at 8.) Defendant stresses that the Court, in ruling for summary judgment in his favor, specifically found that "[t]he evidence does not indicate an intent to destroy or cause the death of the horses." (Id.) (quoting Doc. 80 at 41.) Defendant also notes that the Court found that "[t]here is no evidence that even remotely suggests that [Defendant] intended to destroy or kill the horses." (Doc. 85 at 8) (quoting Doc. 80 at 41.)

Plaintiffs counter that they had reasonable grounds to believe they might prevail on this matter. In support of their position, Plaintiffs point to a California Highway Patrol report ("CHP report") regarding the July 6, 2008 incident.[2] (Doc. 89-2.) The CHP report recalls the following events. As Defendant drove north on Interstate 5, a car approached Defendant and flashed its headlights to signal that something was wrong with Defendant's horse trailer. (Id. at 6.) Defendant looked back and noticed smoke emanating from the rear of the trailer. (Id.) Defendant pulled to the side of the road, and upon examination of the trailer, observed that the smoke was coming from inside the trailer. (Id.) Defendant decided to continue to drive until he reached the nearest service station. (Id.) Shortly after, Defendant

---

[2] Defendant objects to Plaintiffs' reliance on the CHP report, arguing that it is "largely inadmissible hearsay." (Doc. 92 at 1-2.) Defendant points to the Court's order granting his motion for summary judgment, wherein the Court excluded portions of the report that contained inadmissable hearsay. (Id. at 2.) The Court only considered a redacted copy of the CHP report (Doc. 80 at 5 n.3), and Defendant invites the same approach here.
  Defendant's objection is **OVERRULED**. While hearsay may not be relied upon as support for a motion for summary judgment, it does not follow that a party may not rely on hearsay to form a reasonable belief that it might prevail on a matter within the meaning of Federal Rule of Civil Procedure 37(c)(2)(C). Plaintiffs are not offering the CHP report as evidence to prove the truth of the matters asserted therein. See Fed. R. Evid. 801. Instead, Plaintiffs are relying on the CHP report to show that there was some legitimate basis for its claims.

1 pulled to the side of the road for a second time. (Id.) This time, Defendant discovered that the trailer
2 was on fire. (Id.) Nevertheless, Defendant decided to continue to drive until he reached the service
3 station. (Id.) By the time Defendant reached the service station, the trailer was fully engulfed in flames
4 and Defendant could not rescue the horses. (Id.)

   Based on the report, it was reasonable for Plaintiffs to believe that it was possible for Defendant to stop on several occasions and remove the horses from the trailer before it was consumed by fire. It was therefore also reasonable for Plaintiffs to believe that they might be able to show that Defendant intentionally harmed the horses or knew with substantial certainty that harm would result to the horses when he did not promptly remove the horses from the trailer after it began spewing smoke. Although Plaintiffs were not ultimately successful in producing admissible evidence on this issue to avoid summary judgment, that is not the test under Rule 37(c)(2). "[T]he true test under Rule 37(c) . . . is whether [Plaintiffs] acted reasonably in believing that [they] might prevail" at the time the requests for admissions were made. Marchand, 22 F.3d at 937.

   Defendant argues that Plaintiffs should not have relied exclusively on information contained in the CHP report. (Doc. 90 at 5.) Rather, Defendant asserts that Plaintiffs should have asked the Horse Owners whether they believed Defendant intentionally harmed the horses. (Id. at 6.) Defendant maintains that had Plaintiffs made this inquiry, Plaintiffs would have realized that it was unreasonable to believe that Defendant intentionally harmed the horses on July 6, 2008. (Id.) In essence, Defendant attempts to analogize the facts in this case with those presented in Marchand.

   The Court is not persuaded. Whether the Horse Owners believed that Defendant would intentionally harm the horses is not on point. The Horse Owners were not present at the incident and their expressed sentiments, that Defendant loved and cared for the horses generally, is tangential at best to a determination of Defendant's actual intent on July 6, 2008. To the extent that the Horse Owners' testimony is relevant, it falls far short of constituting overwhelming contradictory evidence within the meaning of Marchand and is insufficient to undercut the reasonableness of Plaintiff's reliance on the

information set forth the CHP report.[3]

Accordingly, the Court finds that Plaintiffs had a reasonable basis for believing that it might prevail on this matter. Therefore, attorneys' fees pursuant to Rule 37(c)(2) is unwarranted with respect to these requests for admissions. See Fed. R. Civ. P. 37(c)(2)(C).

### 3. Requests for Admissions Regarding Waiver of Rights

Defendant requested Plaintiff Diamond State Insurance Company to admit that the three horse owners it insured (Leslie Pierce, Karen Lachman, and Kelle Howard) signed waivers that waived the Horse Owners' rights (and Plaintiff's rights as the subrogee) to file suit against Defendant. Defendant also requested Plaintiff Diamond State Insurance Company to admit that the horse owners it insured signed waivers the effectively released Defendant from liability for claims arising out of his negligence. Defendant's request for admissions and Plaintiff's responses are as follows:

> REQUEST FOR ADMISSION NO.9:
> Admit that by executing Exhibit A [a copy of a waiver signed by Leslie Pierce] Leslie Pierce agreed to waive the right to bring an action or lawsuit against Deardorff for damage to her property and for harm or injury to her horse.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 9:
> Objection. Responding party objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Responding Party further objects to this request on the grounds that it contains subparts in violation of Fed. R. Civ. Porc. 36(a)(2). Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.
>
> REQUEST FOR ADMISSION NO. 10:
> Admit that by executing Exhibit A Leslie Pierce agreed to release Deardorff from any and all claims which may arise out of his negligence.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 10:
> Objection. Responding Party objects to this request on the ground that it is overbroad as to the term "any and all claims." Responding Party further objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Finally, Responding Party objects to this request on the grounds that it contains subparts in violation of Fed. R. Civ. Proc. 36(a)(2). Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.

///

---

[3] The Court held no differently in its ruling on summary judgment. In its order, the Court noted that the Horse Owners testified as to Defendant's love and care for the horses. (Doc. 80 at 40.) However, only when this evidence was considered in the context of far more direct evidence (i.e. Defendant's deposition testimony) did the Court reject Plaintiffs' conversion claims on the basis that the totality of the evidence did not show that Defendant intentionally caused the death of the horses. The Court did not suggest that the Horse Owners' testimony, in of itself, was sufficient to establish the issue.

REQUEST FOR ADMISSION NO. 12:
Admit that by executing Exhibit B [a copy of a waiver signed by Karen Lachman] Karen Lachman agreed to waive the right to bring an action or lawsuit against Deardorff for damage to her property and for harm or injury to her horse.

RESPONSE TO REQUEST FOR ADMISSION NO. 12:
Objection. Responding party objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Responding Party further objects to this request on the grounds that it contains subparts in violation of Fed. R. Civ. Porc. 36(a)(2). Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.

REQUEST FOR ADMISSION NO. 13:
Admit that by executing Exhibit B Karen Lachman agreed to release Deardorff from any and all claims which may arise out of his negligence.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:
Objection. Responding Party objects to this request on the ground that it is overbroad as to the term "any and all claims." Responding Party further objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.

REQUEST FOR ADMISSION NO. 15:
Admit that by executing Exhibit C [a copy of a waiver signed by Kelle Howard] Kelle Howard agreed to waive the right to bring an action or lawsuit against Deardorff for damage to her property and for harm or injury to her horse.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:
Objection. Responding party objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Responding Party further objects to this request on the grounds that it contains subparts in violation of Fed. R. Civ. Porc. 36(a)(2). Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.

REQUEST FOR ADMISSION NO. 16:
Admit that by executing Exhibit C Kelle Howard agreed to release Deardorff from any and all claims which may arise out of his negligence.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:
Objection. Responding Party objects to this request on the ground that it is overbroad as to the term "any and all claims." Responding Party further objects to this request on the grounds that it calls a legal conclusion and seeks information protected by the attorney-client privilege. Finally, Responding Party objects to this request on the grounds that it contains subparts in violation of Fed. R. Civ. Proc. 36(a)(2). Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: Deny.

(Doc. 86-4 at 3-4; Doc. 86-5 at 5-8.)

Defendant argues that through discovery and his motion for summary judgment, he proved that

the Horse Owners insured by Plaintiff Diamond State Insurance Company, waived their right to initiate a lawsuit against Defendant for any harm or injury to the horses. (Doc. 85 at 8.) Moreover, Defendant emphasizes that the Court specifically found in its order granting summary judgment that "because the causes of action for breach of contract, conversion, trespass to chattels, and simple negligence arise out of allegedly negligent conduct by [Defendant], each of these causes of action by Diamond State are barred by the release." (Id.) (quoting Doc. 80 at 24.) Plaintiffs counters in its opposition that it had a reasonable belief that it might prevail on this issue by showing that the waivers were not enforceable under applicable law. (Doc. 89 at 11.)

Notably, by their own terms the waivers are governed by Oregon law. (Doc. 86-4 at 7-10.) Under Oregon law, a liability waiver will not protect a party from liability arising from his own gross negligence or willful conduct. Farina v. Mt. Bachelor, Inc., 66 F.3d 233, 235-36 (9th Cir. 1995). Thus, as a matter of law, Defendant's RFAs–which attempt to force an admission that by signing the waivers the insureds (and Plaintiffs as the subrogees) relinquished *all* rights to bring an action against Defendant for damage to the horses–was legally unsound. If the damage to the horses was the result of Defendant's gross negligence or willful conduct, the insureds (or Plaintiffs as the subrogees) could recover notwithstanding the waivers. See id. at 235.

As discussed above, Plaintiffs reasonably believed, based on facts contained in the CHP report, that they might succeed in demonstrating that Defendant's actions constituted gross negligence, if not intentional conduct. From this, it was reasonable for Plaintiffs to believe that it might prevail in proving that the waivers were unenforceable under Oregon law. Thus, as a whole, Plaintiffs had a legitimate basis for denying the assertion in Requests for Admissions 9, 12, and 15 that the waivers absolutely precluded the insureds (and Plaintiffs as the subrogees) from filing *any* lawsuit against Defendant.

Plaintiffs also had a legitimate basis for denying Requests for Admissions 10, 13, and 16 (waiver of any and all claims arising out of Defendant's negligence). As the Court noted in its order granting summary judgment, "gross negligence is still a species of negligence." (Doc. 80 at 41.) In this respect, it was fair for Plaintiffs to construe the phrase "any and all claims which may arise out of [Defendant's] negligence" as encompassing gross negligence. Plaintiffs therefore properly denied these requests for

admissions.[4] By signing the waivers, the insureds did not and could not agree to release Defendant from any and all claims arising from negligence, if his any of the claims arose under gross negligence. See Farina, 66 F.3d at 235.

Defendant protests that Plaintiffs "transform" his requests for admissions by focusing on the enforceability of the waivers. (Doc. 90 at 7-8.) However, Plaintiffs' interpretation of the requests for admissions was entirely reasonable. Plaintiffs understood the requests for admissions as calling for the application of fact to law, i.e., the legal effect of the waivers. Plaintiffs' objections to the requests for admissions clearly indicated this. If Defendant intended the requests for admissions to inquire into a different or more precise issue, he should have clarified the RFA once Plaintiffs's objections were received or sought relief from the Court through a Rule 36(a)(6) motion.[5]

Finally, the Court is not persuaded that Plaintiffs had any obligation to consult with the Horse Owners on this matter or that the testimony of the Horse Owners undermined the reasonableness of Plaintiff's belief that it might prevail on this issue. Plaintiffs' responses were grounded in a legal theory regarding the enforceability of the waivers which was supported by factual information indicating that the legal theory was viable. Specifically, Plaintiffs had a copy of the signed waivers, which state on their face that Oregon law applies, and a copy of the CHP report, which contains facts suggesting that Defendant's actions constituted gross negligence or intentional conduct. Whether the Horse Owners personally believed the waivers were enforceable as a matter of law was irrelevant.

Accordingly, the Court finds that Plaintiffs had a reasonable basis for pursuing this matter. Therefore, attorneys' fees pursuant to Rule 37(c)(2) is unwarranted with respect to these requests for admissions. See Fed. R. Civ. P. 37(c)(2)(C).

### 4. Requests for Admissions Regarding Use of the Horses

Defendant contends that Plaintiffs failed to admit that Defendant did not take the horses for his

---

[4] Sanctions are not appropriate where the request *was* objectionable. Fed. R. Civ. P. 37(c)(2)(A). Moreover, "'Denial of flawed requests for admission, although not objectionable, may substantiate 'other good reason for failure to admit.' See Long v. Howard University, 561 F.Supp.2d 85, 93 (D. D.C. 2008) ('very broad and ambiguous language' in requests for admission rendered them 'significantly flawed' to warrant denials)." McIntosh v. N. Cal. Universal Enters., 2010 U.S. Dist. LEXIS 93476, at *10-11 (E.D. Cal. Aug. 23, 2010)

[5] At the hearing, Defendant's counsel reported that he had clarified the content of the requests, however, the Court was not directed to any evidence presented with the motion that demonstrates the clarification and the Court has not located any such evidence. Moreover, counsel did not indicate the exact clarification made.

own use. (Doc. 85 at 3-5.) The request for admission and Plaintiff Diamond State's response are as follows:

> REQUEST FOR ADMISSION NO. 18:
> Admit that Deardorff never took the Horses from the Horse Owners for his own use.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 18:
> Objection. Responding Party objects to this request on the grounds that it calls for speculation. Responding Party further objects to this request on the grounds that it is vague as to the term "his own use." Finally, Responding Party objects to this request on the grounds that it is overbroad, vague, and ambiguous as to the terms "for his own use." Further Responding Party has insufficient information at this time to enable Responding Party to admit or deny this request in whole. Discovery and investigation are ongoing and Responding Party reserves the right to amend and/or supplement this response.

(Doc. 86-4 at 4; Doc. 86-7 at 3.) The request for admission and Plaintiff Great American's response are as follows:

> REQUEST FOR ADMISSION NO. 9:
> Admit that Deardorff never took the Horses from the Horse Owners for his own use.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 9:
> Objection. Responding Party objects to this request on the grounds that it calls for speculation. Responding Party further objects to this request on the grounds that it is overbroad in time and scope as to the term "never." Finally, Responding Party objects to this request on the grounds that it is overbroad, vague, and ambiguous as to the terms "for his own use." Subject to and without waiving any of Responding Party's general objections or these specific objections, Responding Party answers as follows: The information known or readily obtainable by Responding Party is insufficient to enable Responding Party to admit or deny this request.

(Doc. 86-8 at 4; Doc. 86-9 at 5.)

Plaintiffs' objections to these requests for admissions are well-taken.[6] The Court agrees that the term "never" is overbroad in time and scope and the term "for his own use" is ambiguous and vague. Moreover, despite Defendant's argument to the contrary, in ruling on the conversion and trespass to chattels claims, the Court found that there was no evidence indicating that Defendant intended to cause the death of the horses on July 6, 2008. (See Doc. 80 at 42) ("The interference at issue in this case is the death or destruction of the horses [on July 6, 2008]."). The Court's narrow conclusion did not establish that Defendant never took the horses for his own use. Accordingly, because this matter was never proven, the Court finds that attorneys' fees pursuant to Rule 37(c)(2) is unwarranted with respect

---

[6] Therefore, sanctions are not appropriate. Fed. R. Civ. P. 37(c)(20(A).

14

to these requests for admissions.

### C.     Award

Under Rule 37(c)(2), a party is entitled to reasonable expenses, including attorneys' fees, that were incurred in proving a matter that should have been admitted under Rule 36(a). Fed. R. Civ. P. 37(c)(2). When a party seeks an award of attorneys' fees, he is required to comply with Local Rule 293 and set forth information as required by the Rule. McIntosh v. N. Cal. Universal Enters., 2010 U.S. Dist. LEXIS 93476 at *16-21 (E.D. Cal. Aug. 23, 2010)("A party seeking attorney fees 'should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.' Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L. Ed. 2d 40 (1983).")[7]

To prove the propriety of an award of summary judgment, Defendant relied extensively on the testimony of the Horse Owners to establish that the horses died while he was providing "boarding" services. Defendant, therefore, is entitled to reasonable expenses and attorneys' fees that were incurred in obtaining this evidence. This includes: (1) $11,343.84 in attorneys' fees related to preparation for the Horse Owners' depositions; (2) $6,050 in attorneys' fees related to attending and taking the Horse Owners' depositions; and (3) $1,358.50 in travel expenses related to attending Leslie Pierce's (a horse owner) deposition in Kentucky. The total award amounts to $18,752.34.

On the other hand, Defendant is not entitled to <u>all</u> costs associated with defending the case.[8] For example, had Plaintiffs admitted the key facts related to whether the horses were being boarded at the time of their deaths, Defendant still would have had to file a motion for summary judgment. Thus, the fees for drafting the motion are not recoverable–they were not *caused by* the failure to admit the facts

---

[7] The Court finds the billing statement attached to Mr. Bledsoe's supplemental declaration to be particularly unhelpful. It broad groups activities and provides scant explanation as to the acts actually accomplished. Likewise, there is little information provided regarding the other elements required by Local Rule 293.

[8] Counsel's argument that he would have been able to file the motion for summary judgment earlier had the requests been admitted–and thus, avoid many costs of defending the matter–rings hollow. The Court is aware that despite the failure of Plaintiffs to admit the requests discussed herein, Defendant failed to take the depositions of the Horse Owners. Though his attorney attended the depositions of the Horse Owners, they were taken by Plaintiffs' counsel. In fact, Defendant was vociferous in his position that Plaintiff should not be allowed to exceed the ten depositions allowed by the Rules. (Doc. 53) This resulted in no one taking the deposition of the sixth Horse Owner. (Doc. 54) Thus, it was well within the control of the Defendant to seek an earlier resolution of the matter but he failed–for reasons the Court cannot fathom–to take these key depositions and took active steps to ensure that Plaintiffs did not either. Although the purpose of the sanction of Fed. R. Civ. P. 37(c)(2), is to allow early resolution of cases and to preserve litigation resources (Marchand, at 936), Defendant also is culpable for failing to bring this case to a speedy end.

nor were they incurred toward proving the RFA improperly denied. Moreover, the cost of preparing for and attending the deposition of Defendants, the eye witnesses and the first responders and the cost of sending the motion for summary judgment to the Court via overnight mail, are not recoverable because there is no showing that these costs were incurred in proving the matters that should have been admitted.

## IV.     CONCLUSION

In accordance with the above, **IT IS HEREBY ORDERED** that:

1. Defendant's April 29, 2011 motion for attorneys' fees pursuant to Rule 37(c)(2) (Doc. 84) is **GRANTED IN PART** and **DENIED IN PART**; and

2. Defendant is awarded expenses and attorneys' fees against Plaintiffs in the amount of $18,752.34.

IT IS SO ORDERED.

Dated:   **June 8, 2011**                                        /s/ Jennifer L. Thurston
                                                                       UNITED STATES MAGISTRATE JUDGE